# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE  DIVISION

CITIZENS BANK AND TRUST,              ]
                                      ]
    **Plaintiff,**              ]
                                      ]
v.                                    ]
                                      ]     **CV-13-BE-250-M**
LPS NATIONAL FLOOD, LLC,              ]
                                      ]
    **Defendant.**             ]
                                      ]
                                      ]
                                      ]
                                      ]

## MEMORANDUM OPINION

Defendant, LPS National Flood, LLC, removed this matter to this court based on diversity jurisdiction.  The Plaintiff, Citizens Bank and Trust, asserts breach of the contract between it and LPS for a flood zone determination and requests indemnity for losses resulting from an incorrect flood zone determination.  This case now comes before the court on "Defendant LPS National Flood, LLC's Motion for Summary Judgment" (doc. 18); "Plaintiff's Motion for Summary Judgment" (doc. 21); and "Defendant LPS National Flood, LLC's Motion to Strike" (doc. 26). The parties filed responses (docs. 24 & 25) and replies (docs. 27 & 28) to the dispositive motions, and a response (doc. 29) and a reply (doc. 30) to the motion to strike; these motions have received thorough briefing.

For the reasons stated in this Memorandum Opinion, the court FINDS that both motions for summary judgment are due to be GRANTED IN PART and DENIED IN PART.  More specifically, the Defendant LPS's motion is due to be DENIED as to the breach of contract claim

in Count I and GRANTED as to the claim for indemnification in Count II; Plaintiff Citizens

Bank's motion is due to be GRANTED as to the breach of contract claim in Count I and

DENIED as to the claim for indemnification in Count II.

Further, the court FINDS that the motion to strike is due to be GRANTED IN PART and

DENIED IN PART; the court WILL GRANT the motion as to the Lloyds of London quote and

the 2010 Payne Appraisal, but WILL DENY the motion as to the affidavits of Patterson and

Alred, and the Coate emails.

## I.  MOTION TO STRIKE

Because the motion to strike affects which facts are included in the fact section of this

opinion regarding the dispositive motions, the court first addresses the motion to strike.

### A.  Affidavits of Patterson and Alread

In the motion, Defendant LPS  asserts that the court should strike the affidavit of Stanley

Patterson (doc. 22-2), who is Senior Executive Vice-President and Senior Lender of Citizens

Bank, and the affidavit of Michael W. Alred (doc. 22-3, at 37-38), who is President and CEO of

Citizens Bank.  It asserts that these affidavits "directly contradict[] the position that Citizens

Bank has continually asserted in its Complaint, Amended Complaints, and throughout the entire

course of litigation to this point."  (Doc. 26, at 2).   LPS acknowledges that the pleadings in this

case and the affidavits are consistent to this extent: they all state that Citizens Bank would not

have issued the loan if it had known that the property subject to the loan was in a flood zone.

The alleged contradiction, as LPS sees it, is the difference between Citizens Bank having an

absolute policy against loans on flood plain property versus considering such loans with extreme

caution given the risks.

The Second Amended Complaint states that Citizens Bank "is extremely reluctant to issue loans for homes in flood zones based on the risk it poses to the bank," but does not specifically state that it had a hard-and-fast policy of *never* issuing such loans.  Rather it states: "Had Citizens initially known the property was in a flood zone in 2007, [it] would have been aware there would be a significantly higher insurance premium which would affect the cash flow of the borrower, as well as potentially lowering the property value and limiting the number of interested buyers."  (Doc. 5, at 5).  This same language was also in the original Complaint (doc. 1-1, at 6) and Amended Complaint (doc. 1-1, at 17).

The affidavits of both Patterson and Alred note that they have veto power over any Bank loan, and state that had Citizens Bank received a report indicating that the property subject to the loan was in a flood zone, both men would have declined to approve the loan.  Both affidavits contain the following language: "Citizens Bank would not normally make a loan on a single family Investment Property located in a flood zone outside of Citizens' normal service area, or footprint, which is North Alabama and does not include the Gulf Coast." (Doc. 22-2, at 4 & Doc. 22-3, at 37).

The court sees no direct contradiction in the language of the pleadings versus the language of the affidavits.  The pleadings speak of Citizens Bank being "extremely reluctant" to issue loans in flood plans and the affidavits state that the Bank would "not normally" issue loans on property located in a flood zone in areas such as the Gulf Coast.  While the wording used is slightly different, difference does not always result in contradiction, and it does not do so here; all of the documents indicate that Citizens Bank has no absolute rule against such loans but that it disfavors them and would not normally agree to issue them.  "Normally" does not mean "never."

Even if the Bank did not have a hard-and-fast rule against loans on property in flood zones, however, the Bank officers may certainly testify that they had veto power over loans and, if they had known that the property in question—a single family Investment property located outside the normal service area on the Gulf Coast—was in a flood zone, they would not have approved it.

Further, LPS argues that the officers' declarations directly conflict with deposition testimony regarding Citizens Bank's lending practices. LPS points to Patterson's testimony that the Bank has issued loans in Baldwin County for properties located in a flood zone, and thus, given that history, it argues he cannot testify that he would not have considered approving the loan here. LPS also points to Patterson's testimony that he could not, "right off the top of my head," name any loan other than the loan in question that the Bank turned down because the property was located in a flood zone. (Doc. 22-2, at 42, p. 144).

A careful reading of Patterson's testimony reveals no conflict. Rather, his testimony—made off the top of his head without a review of bank loan records—is that the Bank had probably issued loans for property in flood zones in North Alabama where Bank employees were familiar with the property and the risk. Further, he also testified that the Bank had probably issued beach condo loans, but he consistently stated that, other than the loan in question, which was not originally designated as property in a flood zone, he did not believe that the Bank had ever made a loan on a single family Investment property in Gulf Shores in a flood zone, and he would have declined this one had he known that it was located in a flood zone. *See* Doc. 22-2, at 41-42, pp. 139-40 & 142.

Finding no inherent inconsistency among the pleadings and the affidavits, the court FINDS that the motion to strike is due to be DENIED as to the affidavits of Patterson and Alred.

4

*See Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1237 (11th Cir. 2010) (stating that the sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case" and that a court must "find some inherent inconsistency between the affidavit and a deposition before disregarding the affidavit.").

### B.  2010 Payne Appraisal & Lloyd's of London Insurance Quote

Defendant argues that Weldon Payne's 2010 Appraisal and Lloyd's of London Insurance Quote should be stricken because those documents represent inadmissible hearsay and are unauthenticated.  The Plaintiff relies on the business records exception to hearsay, arguing that the Bank received and maintained these documents in the ordinary course of business.  Defendant replies that these documents do not fall into that hearsay exception, because the documents remain unauthenticated and no affiant or declarant states that these documents were received and preserved in the regular course of business.

In *U.S. v. Langford,* 647 F.3d 1309 (11th Cir. 2011), the Eleventh Circuit addressed admissibility under the business records exception, stating that a proper foundation for a business record existed where an affiant or declarant identified the document, and stated "that it was made and preserved in the regular course of business."   The Court found that the business records exception applied where a custodian of records at the bank testified, identifying documents as authentic and stating that although the bank had not created the documents, the bank had gathered the documents from other businesses and had kept them routinely in the normal course of the bank's business.  The court has broad discretion to determine whether such evidence is admissible.  *Id.* at 1327.

In the instant case, the court rejects the Defendant's argument that a bank cannot

authenticate as a business record a document originally created by a third party; banks and other businesses do so routinely, as the Court recognized in *Langford.*  However, just because a document created by a third party *can* become the Bank's business record does not mean that Citizens Bank has established that the documents challenged here *are* its business records.  That authentication would not be arduous, and the testimony of a Bank employee familiar with what records are kept in the ordinary course of business could certainly serve that purpose.  Here, Citizens Bank has not provided such testimony.  Citizens Bank points the court to testimony of Patterson, a Bank officer, in which he presumably addresses the Lloyd of London quote.  The court notes that the deposition testimony refers to Exhibit 7 but no exhibits are attached to the deposition filed with the court to ensure that Exhibit 7 is the same Lloyd's of London quote filed separately with the court as Exhibit T to the Bank's motion for summary judgment; Exhibit T has no Exhibit 7 sticker attached.  Although Exibit T is the only Lloyds of London quote in the submitted evidentiary material, the court cannot assume that this document is a true and correct copy with no testimony to that effect.  In Patterson's testimony regarding Exhibit 7, he stated that he *assumed* it was the quote somebody got on the property when the company learned the property was in a flood zone.   (Doc. 22-2, at 43-44 & 47, pp. 148-47 & 164).

The court agrees with the Defendant that this testimony does not authenticate the Lloyds of London quote (doc.  22-4, at 68-69) and does not establish that Citizens Bank kept it in the normal course of the bank's business.  For these reasons, the court FINDS that the motion to strike is due to be GRANTED as to the Lloyds of London insurance quote.

As to the 2010 Payne Appraisal, LPS asserts that it is also unauthenticated and inadmissible hearsay.  Citizens Bank points the court to no testimony authenticating the

document, and the court agrees that simply placing an unauthenticated document in an evidentiary submission does not transform it into admissible evidence.

However, even though no party points the court to it, Patterson's affidavit refers to the appraisal and purports to have personal knowledge about it.  The affidavit states:  "In conjunction with its standard foreclosure procedure, Citizens obtained an appraisal on the [Kelley] Property. This appraisal, dated March 15, 2010, indicated the property was worth $230,000, and that it *was* in a flood zone."  (Doc. 22-2, at 3 ¶ 11).  The affidavit does not attach the appraisal or refer to its number, but the evidentiary submission includes only one appraisal dated March 15, 2010 on the Kelley property in Gulf Shores, and the appraisal is by Weldon Payne evaluating the property for $230,000 and clearly stating that the property is in a FEMA Special Flood Hazard Area. However, for all the court knows, this document inserted into the evidentiary submission could be a doctored copy of the appraisal; no one declares or testifies that it is a true and correct copy of the appraisal kept in the ordinary course of the Bank's business.  Accordingly, the court FINDS that Exhibit K to Citizens Bank's motion for summary judgment entitled "Exterior--Only Inspection Residential Appraisal Report" is not authenticated and no testimony established that it is a "business record" of the Bank; therefore, the motion to strike is due to be GRANTED as to the appraisal.

Despite that ruling, the court also FINDS that this ruling does not bar Patterson's testimony that the Bank received an appraisal on the Kelley property dated March 15, 2010 indicating that the property was worth $230, 000 and that it was in a flood zone; he can testify that the Bank received such an appraisal as an officer of the Bank professing personal knowledge about receiving that appraisal regardless of whether he has authenticated the Exhibit K appraisal.

The court notes, however, that its ruling does not mean Patterson can testify to the truth of the matters asserted in the unauthenticated appraisal.

### C.  Coate Emails

Defendant originally argued that the emails to and from Realtor Virginia Coates offered by the Bank, represented inadmissible hearsay.  The Bank attached Coates's affidavit (doc. 28-1, at 2-3, in turn attaching emails as an exhibit at  4-6) to its reply brief supporting the Bank's motion for summary judgment, and asserted that her affidavit resolved the hearsay problem with the emails. LPS maintained that the hearsay problems remain.

To the extent that Defendant argues that Coate's email thread and affidavit are due to be stricken entirely, the court rejects that argument.  Coate's affidavit, which purports to based on personal knowledge, states that she was listing agent for the property and that "two potential purchasers rescinded offers or lost interest in purchasing 440 Magnolia Drive due to high insurance costs on the property."  (Doc. 28-1, at 2).  The affidavit attaches and authenticates the email thread as emails notifying Citizens Bank & Trust "of the rescinded offers and/or the buyers that lost interest in purchasing the property."  (Doc. 28-1, at 3).  LPS did not file a motion to strike this affidavit.  Coate may certainly testify about her real estate dealings and state that potential purchasers lost interest when notified of the high insurance costs on the property.  She may also testify about and attach emails in which she documented those dealings and notified the Bank about them.

In paragraph 7 of her affidavit, Coate does not explain the basis for her statement that other realtors showed the property to potential buyers who were uninterested due to the low elevation of the property, and the affidavit does not provide information establishing her personal

8

knowledge of that particular statement.

Given that most of the statements in the affidavit are based on personal knowledge of the realtor who was the listing agent for the property in question, and given that the affidavit authenticates the emails attached to it, the court FINDS that the motion to strike is due to be DENIED as to the affidavit as a whole and attached emails.  However, despite the court's refusal to strike the affidavit and attached emails in their entirety, the court is capable of disregarding any part of those documents that is hearsay and is not based on personal knowledge.

In sum, the court FINDS that the motion to strike is due to be GRANTED IN PART and DENIED IN PART.  The court WILL GRANT the motion as to the Lloyds of London quote and the 2010 Payne Appraisal, but WILL DENY the motion as to the affidavits of Patterson and Alred, and the Coate emails.

## II. MOTIONS FOR SUMMARY JUDGMENT

The cross-motions each request that this court grant summary judgment in the movant's favor on all allegations of the Second Amended Complaint, which contains two counts.   Count One asserts Breach of Contract for a flood zone determination, and Count Two asserts breach of an indemnification provision in the contract presented to plaintiff for Flood Compliance Services.

### A.  Facts

The FDIC requires Citizens Bank to seek Flood Compliance Services prior to the issuance of an mortgage, and the Bank does so on all mortgages regardless of where the property is located.  In April of 2004, Citizens contracted with Geotrac, Inc. to be its exclusive provider for flood zone determinations.  The current Defendant, LPS National Flood, LLC, is a successor

in interest to an entity that ultimately merged with Geotrac.[1]  LPS has confirmed that its has

"stepped into the shoes of Geotrac" as to the contract with Citizens Bank.

That contract, which Geotrac drafted, is entitled "SERVICE AGREEMENT BETWEEN

CITIZENS BANK & TRUST AND GEOTRAC, INC. FOR FLOOD COMPLIANCE

SERVICES" and provides in relevant part:

> DUTIES OF LENDER
> - Submit Flood Zone Determination (FZD) requests via fax or other electronic media
>
> DUTIES OF GEOTRAC
> - Provide Geotrac's edition of FEMA's Standard Flood Hazard Determination form containing: current Community Status ...; FEMA Flood Zone of the location of the structure(s); current NFIP Flood Map Panel...; requirement and availability of NFIP Flood Insurance; Secondary Market/Government Program Loan Restrictions; and approved FEMA borrower notification
>
> \*\*\*
> - *Provide guarantees for accuracy of all FZDs, HMDA/Census Tract, and Full Life-of-Loan tracking and reprocessing, backed by external insurance. Geotract uses a good faith interpretation of Federal Flood Insurance Rate Maps, Federal Flood Hazard Boundary Maps, Census Bureau and Federal Reserve published data, and other published information from governmental and private sources.  Geotrac cannot guarantee the accuracy of such outside sources, but assumes responsibility for negligence in any such interpretations.*
>
> \*\*\*
> - Terms of agreement set forth as 2 year(s) with automatic renewal unless otherwise agreed upon between parties.
>
> \*\*\*
>
> INDEMNIFICATION
> - Flood Zone Determinations made by Geotrac, herein referred to as "Company[,]" represent a good faith interpretation of Federal Flood Insurance Rate Maps, or Federal Flood Hazard Boundary Maps, and information from government and private sources along with the lender.

[1] Defendant LPS has undergone several name changes.  For the sake of clarity, this Opinion will refer to LPS as the entity providing flood zone determination services to Citizen, regardless of the actual name of the entity at the time the service occurred.

> Although Company does not guarantee the accuracy of these outside information sources, it does assume responsibility for the completeness and timeliness of this information.
> - Company shall hold Client safe and harmless from and against any and all loss or expense arising from claims or actions by any customer of Client based upon the negligence of Company in interpreting the above referenced Federal Flood Maps and hence failing to correctly identify and report to Client that a particular insurable structure securing a loan by Client is within (false flood negative) or outside (false flood positive) a Federally defined NFIP Special Flood Hazard Area; provided, however, that such liability shall in no event exceed the actual loss and expenses to client less any insurance or recovery from another source. *This indemnification provision is only applicable to claims made by Client or customer's [sic] of Client against Client, resulting from damage to Client or customer's improved real property caused by flooding as defined by the NFIP* (false flood negative) or customer of Client's payment of unnecessary NFIP flood insurance premiums (false flood positive), provided Client supplies verbal notices as soon as is practicable and written notice within 30 days of Client's first becoming aware of such claims . . . . Furthermore, flood determinations are provided solely for the use and benefit of Client in order to comply with the 1994 Reform Act and may not be used or relied upon by any third party for any purpose. . . .

(Doc. 19-1) (emphasis supplied).  Citizens Bank has no system to check the accuracy of LPS's flood zone determinations.

In 2007, Citizens Bank ordered from LPS a flood zone determination for a Property located at 440 Magnolia Drive, Gulf Shores, Alabama, owned by Mr. Jim Kelley.  On December 4, 2007, LPS sent to Citizens Bank a report indicating that the Kelley property was *not* in a flood zone when it was in fact located in a flood zone; this determination was incorrect.  LPS had contracted with a third-party vendor called Proxix, a latitude/longitude identifier, to place the property on a FEMA grid, but Proxix incorrectly placed the property approximately 1,200 feet from its actual location, on the wrong FEMA grid.  An automated computer system determined that properties in that particular FEMA grid were not in a flood zone, resulting in LPS's incorrect

11

determination that the Kelley property was not located in a flood zone.  LPS has acknowledged that Citizens Bank did nothing to cause the inaccuracy in the December 2007 flood zone determination report.

Taking this flood zone determination report into consideration, Citizens Bank agreed to refinance an existing loan from another bank on the Kelley property, and an internal Bank committee approved the loan on December 18, 2007 in the amount of $250,000.  In December of 2007, the Bank valued the Kelley Gulf Shores property at $440,000 based on a 2006 appraisal prepared for the previous lender, as well as a 2007 tax evaluation on the property.

At the time Citizens Bank made the decision to approve the loan, the Bank had no written criteria governing the analysis of a loan on a property in a flood zone.  Citizens Bank acknowledges that it makes loans on other properties in flood zones, and that, on at least four or five occasions during 2007 and 2008, it made loans on *condominium units* in the Gulf Shores/Baldwin County area that were located in flood zones.  Viewing the loan from loan-to-value ratios or debt service ratios, Citizens Bank acknowledged that the Kelley loan was well within any of the Bank's guidelines.

Citizens Bank officers testified that, if they had known that the Kelley property was located in a flood zone, the Bank would not have agreed to issue a loan on that property, because the Bank would not normally make a loan on a *single family Investment Property* located in a flood zone outside of Citizens Bank's normal service area, which is North Alabama.  Patterson, who held the position of Senior Executive Vice-President and Senior Lender at Citizens Bank, testified that he had veto power over loans presented to the Bank internal committee in 2007, and that he would not have approved a loan on a single-family house in Gulf Shores located in a

flood zone.  He also testified that, other than the Kelley loan, he had no knowledge of *any* loan that Citizens Bank had ever issued on a single-family house in Gulf Shores located in a flood zone.  He explained that the Bank would make some loans in flood zones in North Alabama when personnel considering the loans were familiar with the property in question.  As discussed in the motion to strike section, Patterson could not name, off the top of his head, a single time when the Bank had refused to fund a loan simply because the property was in a flood zone, but, on the other hand, he could not say that the Bank had *not* refused a loan for that reason. Patterson's statement that he would have declined the loan was not based on the Bank's history of issuing a loan on property subsequently flooded where flood insurance did not pay the necessary payment.  Rather, Patterson testified that property in a flood zone would have more inherent risk, and he would not have approved that risk in this instance had he known the Kelley property was in a flood zone.

Although Alred, the President and CEO of Citizens Bank, had veto power over any loan presented to the Bank loan committee and also could overrride Patterson's veto, Alred similarly testified that he, too, would have declined to approve the Kelley loan had the Bank received a report that the Kelley property was located in a flood zone.

Upon approval of the loan, Kelley made payments beginning in 2007 and continuing until early 2010.

The Kelley property received no damage caused by flooding.  However, on April 13, 2010, based on the borrower's default, Citizens Bank was forced to foreclose on the Kelley property.  As part of its standard foreclosure procedure, Citizens Bank obtained an appraisal on that property.  The appraisal, dated March 15, 2010, stated that the property was worth $230,000

and that it *was* located in a flood zone.

Noticing the discrepancy between the 2010 appraisal and the 2007 flood zone determination report, Citizens Bank requested another flood zone determination from LPS. LPS's March 25, 2010 flood zone determination showed that the property *was* located in a flood zone, which confirmed that LPS's 2007 flood zone determination was incorrect.  At this point, LPS had stopped using the third-party vendor that issued its 2007 flood zone determinations, and was using Pitney Bowes, which used a manual determination correctly assigning the longitude/latitude to the Kelley property, and thus, did not repeat the 2007 error.

After foreclosing on the Kelley property, Citizens Bank listed it for sale on August 26, 2010.  Coate, the realtor listing the property, testified that two potential buyers rescinded offers or lost interest in the property after notification of high insurance costs.  Although the Bank originally listed the property at $194,500, the price was reduced several times, and the property sold on April 15, 2011 for $146,000.   In Coate's opinion, based on her experience of selling properties on the Gulf Coast, "given two similar properties with one being in a flood zone and one not in a flood zone, the property in the flood zone is worth less, harder to market, harder to sell, and more costly to insure." (Doc. 28-1, at 3).

Citizens Bank sets the amount of loss from this loan at $152,142. 58, which represents the loan balance of $259,787.90 (including interests and fees) plus miscellaneous expenses of $7,304.47 (including foreclosure costs, appraisals, utilities, lawn maintenance, etc., spent on the property while it was in the Bank's possession) subtracting $137,308.22 for a subtotal of $129,784.15 and adding prejudgment interest on the subtotal from April 15, 2011 to February 27, 2014.  LPS disputes this amount, arguing that damages under breach of contract should merely

put Citizens Bank in the same position that would have existed had the contract not been breached, and the loss amount should take into account such factors as the two years of interest payments it received from Kelley.

### B. Legal Standard

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &*

15

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   Substantive law determines which facts are

material and which are irrelevant. *Id*. at 248.   In responding to a motion for summary judgment,

the non-moving party "must do more than simply show that there is some metaphysical doubt as

to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).   The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P.

56(e)); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28

U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for trial.").   "The non-moving

party need not present evidence in a form admissible at trial; however, he may not merely rest on

his pleadings." *Graham v. State Farm Mut. Ins.* Co., 193 F.3d 1274, 1282 (11th Cir. 1999)

(citing *Celotex,* 477 U.S. at 324).   If he does, or if the evidence is "merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted).

       In reviewing the evidence submitted, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," to determine whether the nonmoving

party presented sufficient evidence on which a jury could reasonably find for the nonmoving

party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir.

1988).   The court must refrain from weighing the evidence and making credibility

determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

Even if a district court "'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (*quoting Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).  The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

The applicable Rule 56 standard is not affected by the filing of cross motions for summary judgment. *See, e.g., United States v. Oakley*, 744 F.2d 1553, at 1555-56 (11th Cir. 1984). When parties file cross motions for summary judgment, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1289 (N.D. Ala. 2009). "The fact that both

parties simultaneously are arguing that there is no genuine issue of fact . . . does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Id.* (internal quotation marks omitted). The Eleventh Circuit has noted that "[c]ross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Oakley*, 744 F.2d at 1555. Nevertheless, "cross-motions may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* at 1555-56.

**C.  Discussion**

In its Second Amended Complaint, Citizens Bank presents two claims: one for breach of contract and one for indemnity.  In the cross motions, each movant asserts its entitlement to summary judgment on both counts, so the court will address both sides' arguments as to each claim.

1.  Count I - Breach of Contract to Provide an Accurate Flood Zone Determination

In Count One, Citizens Bank asserts that LPS breached the contract between the parties in providing an incorrect flood zone determination of the Kelley property in 2007.

"The elements of a breach of contract claim under Alabama law are: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Barrett v. Radjabi-Mougadam,* 39 So. 3d 95, 98 (Ala. 2009) (quotations and citations omitted).

The parties do not dispute that a valid contract existed between the parties, with LPS stepping into the shoes of Geotrac, and do not dispute the wording of that contract.  The parties

18

also do not dispute that Citizens Bank performed its obligations under the contract.  Further, both parties agree that the 2007 determination incorrectly stated that the property was *not* in a flood zone when it was, in fact, in a flood zone.  Indeed, when LPS re-performed the flood zone determination in 2010, it found that the Kelley property was in a flood zone.  The remaining questions are whether this incorrect determination meant that LPS did not perform its obligations under the contract and whether loss resulted from that non-performance.

### a. Element Three: Defendant's Non-performance

The contract between the parties is entitled "SERVICE AGREEMENT BETWEEN CITIZENS BANK & TRUST AND GEOTRAC, INC [LPS] FOR FLOOD COMPLIANCE SERVICES."  Citizens Bank argues that the purpose of the contract between the parties is for LPS to provide flood zone determinations and for Citizens Bank to pay for those determinations. The first duty of LPS under the contract was to "[p]rovide [LPS's] edition of FEMA's Standard Flood Hazard Determination form containing: . . . FEMA Flood Zone of the location of the structure(s) ...."  Another of LPS's duties under the contract was to "[p]rovide guarantees for accuracy of all FZDs" and, where the information comes from outside sources, to "assume[] responsibility for negligence in any such interpretations."  (Doc. 19-1).  In light of the contract's purpose, Citizens Bank argues that LPS's failure to provide an accurate flood zone determination—stating that property was *not* in a flood zone when it *was* in fact in a flood zone—obviously breaches the contract.

### (1). Contract versus Tort

LPS first argues that the allegations of the Complaint and the facts established reflect *not* a non-performance of a contract but a negligent performance of it, which, the argument goes,

sounds in tort, not in contract. In other words, LPS argues that if it had failed to act at all, the correct action would be breach of contract.  However, because the allegation is that LPS did act but did so negligently, LPS claims that the action sounds in tort.  Citizens Bank disagrees, arguing that because  LPS's duty arose out of the contract, the failure to adequately perform that duty is a breach of contract.

The court agrees with Citizens Bank.  The court must acknowledge that Alabama case law has not always carefully drawn the distinction between tort-based actions and those sounding in breach of contract.  The seminal case squarely addressing the distinction is *Hamner v. Mutual of Omaha Insurance Co.,* 270 So. 2d 87 (Ala. Civ. App. 1972), which provided the following explanation:

> if there is a failure or refusal to perform a promise the action is in contract; if there is a negligent performance of a contractual duty or the negligent breach of a duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or tort.  In the latter instance, whether the action declared is in tort or contract must be determined from the gist or gravamen of the complaint.  Basically, the line of division between the actions of contract and tort in such instances is that of nonfeasance and misfeasance.  If there is a defective performance there is a breach of contract and may also be a tort.

*Id.* at 90.  Applying those principles, the Court of Civil Appeals in *Hamner* determined that the trial court did not err in sustaining a demurrer to the tort claim when the facts established that the alleged misfeasance was a breach of promise *arising out of the contract*, which  "could only be complained of in an action for breach of contract."  *Id.*

In *Ex parte Certain Underwriters at Lloyd's of London,* 815 So. 2d 558, 564 (Ala. 2001), the Alabama Supreme Court quoted with approval the general rule outlined in *Hamner.* The Court and also quoted with approval the case of *Alfa Mutual Insurance Company v. Northington,*

604 So. 2d 758, 759-60 (Ala. 1992) which did not recognize a tort remedy for wrongful

cancellation of an insurance.  Noting *Hamner* and *Northington* as support, the Supreme Court of

Alabama found in the *Lloyd's of London* case that the trial court had properly entered summary

judgment on the fraudulent suppression tort claim, stating that the proper claim sounded in

contract, not tort.

 In applying Alabama law, this court and other federal courts sitting in Alabama have

consistently concluded that when the duty allegedly breached is the duty created by the contract

itself as opposed to the general duty of care owed to everyone, the court must treat the claim as a

breach of contract and not as a tort.  *See Cooper v. Sw. Marine & Gen. Ins. Co.*, No. 13-CV-

1651-KOB, 2014 WL 769394, at *12 (N.D. Ala. Feb. 26, 2014) (finding that, because the source

of the duty was the surety agreement, the tort claims were due to be dismissed); *see also*

*Buckentin v. Sun Trust Mortg. Corp.,* 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013) (stating

"[b]ecause the duty Defendant allegedly breached is based on a contract, and because Alabama

law does not permit Plaintiff to assert a tort claim against Defendant for their purported breach of

a contract, both Plaintiff's negligence and wantonness claims are not actionable under Alabama

law"*); Blake v. Bank of Am.,* 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (holding that the

plaintiff's negligence and wantonness claims should be dismissed because the obligations at

issue arose from the mortgage and promissory note, "not from the duty of reasonable care

generally owed to members of the public"); *McClung v. Mortg. Elec. Reg. Sys., Inc.*, No. 11-CV-

3521-RDP, 2012 WL 1642209, at *9 (N.D Ala. May 7, 2012) (holding that plaintiffs did not

allege a tort claim because all of the alleged duties arose from contracts and Alabama law does

not permit a plaintiff to assert a tort claim against a defendant for the purported breach of

contract); and *Porterfield v. Flowers Baking Co. of Opelika, LLC.,* No. 5-CV-937, 2007 WL 4373006, at *16 (M.D. Ala. 2007) (holding that the tort claim for wrongful termination was inappropriate under Alabama law because all of the plaintiff's claims revolved around rights, obligations, and duties specified in a contract).

In the instant case, Citizens Bank alleged misfeasance and not mere nonperformance. Therefore, the court looks to the gravamen of the complaint and the facts established in the evidence presented to the court to determine whether the claims are in tort or in contract. *See Hamner,* 270 So. 2d at 90.  The Complaint and the evidence both establish that the source of the duty that LPS allegedly breached was the contract for flood compliance services, not a duty of care owed to the general public separate from the contract.  Because this court, like other federal courts that have interpreted Alabama law, finds that the source of the duty indicates whether the claim sounds in tort or in contract, and because the source of the duty is the contract itself, the court further FINDS the claim in Count One to be a breach of contract claim.

LPS cites several Alabama decisions to support its  argument that the type of claim asserted in Count One sounds in tort: *Locke v. Ozark City Board of Education.* 910 So. 2d 1247 (Ala. 2005), *Brooks v. Hill,* 717 So. 2d 759 (Ala. 1998);  *Mosley v. Jefferson County Board of Education,* 677 So. 2d 776 (Ala. 1995); *Lemmond v. Sewell,* 473 So. 2d 1047 (Ala. 1985); *Marsh v. Southern Airways, Inc.,* 316 F.2d 91 (5th Cir. 1963) (applying Alabama law); *Great Northern Land & Cattle, Inc. v. Firestone Tire & Rubber Co.,* 337 So. 2d 1323 (Ala. 1976); and *Vines v. Crescent Transit Co.,* 85 So. 2d 436 (Ala. 1956).   The court finds these cases to be inapposite.

In *Locke,* a baseball umpire who was attacked by a high school baseball player brought suit against the board of education, alleging breach of an express contract between the high

school athletic association and the board to provide police protection at ballgames and asserting

his entitlement to sue under the contract as a third-party beneficiary.  The Supreme Court of

Alabama reversed the Circuit Court's summary judgment in favor of the board. Addressing the

board's argument that Locke's allegations sounded in tort rather in contract, the Supreme Court

found that the plaintiff  "has presented substantial evidence showing that the Board failed to

perform its contractual duties and that as a result of the Board's breach of the contract Locke was

harmed.  Locke's complaint sounds in contract, not in tort."  717 So. 2d at 1254.

Although, in the instant case, Citizens Bank was a party to the contract, not a third-party

beneficiary, the reasoning and holding of *Locke* do not necessarily support LPS's position.

*Locke* involved a total failure to perform, a nonfeasance, which the Supreme Court found to be a

breach of contract case.  However, reading that case in conjunction with *Hamner*, *Locke's*

finding does not mean that a negligent performance—a misfeasance—would automatically sound

in tort.   As noted above, *Hamner* teaches that when the allegation points to *misfeasance*, the

claim can sound in tort *or* in contract, so the court looks to the gist or gravamen of the complaint

and the evidence provided to determine whether the duty arose from the contract or from a

general duty of care owed to everyone.  *Hamner,* 270 So. 2d at 90.  As *Locke* did not involve a

misfeasance, its holding does not govern the instant case, but the language nevertheless does not

contradict this court's holding in this case.

*Brooks v. Hill* involved very different facts from those of the instant case: a widow of a

minority shareholder of a close corporation brought an action against the corporation and its

majority shareholders, alleging that the majority shareholder perpetrated a scheme to devalue the

corporation's stock with intent to purchase the minority shareholder's interest.  She argued that

the "breach of fiduciary duty by a director or officer should be viewed as a breach of an implied contract," an argument the Court rejected.  717 So. 2d at 764.  However, that case acknowledged that when parties enter into a contract and when the cause of action arises from "a breach of a promise of the contract itself," the claim sounds in contract.  *Id.* at 763.  Because the instant case involves a breach of the promise in the contract itself—the promise to provide an accurate flood zone determination—the *Brooks* language would support a breach of contract claim here.

In *Mosley,* a parent brought a suit on behalf of her child against a child care provider based on a playground accident; the parent sued not on the express contract between the parent and provider, which provided that the provider would not be responsible for such injuries, but on a breach of an implied contract to provide for the child's safety and welfare.  The Circuit Court entered summary judgment in favor of the provider, and the Court of Civil Appeals affirmed because the existence of an express contract excluded the alleged implied contract on the same subject matter.  677 So. 2d at 778.

That holding does not support LPS's position.  The court's alternative ruling—stating that a breach of an implied contract to use reasonable care would be a negligence action sounding in tort—similarly does not apply to the case at bar, because the breach of promise that Citizens relies upon is a breach of a written contract, not an implied contract to provide reasonable care.

In *Vines,* which *Marsh* cites with approval, the plaintiff sued a bus line for injuries sustained while alighting from a bus and falling into a culvert when the bus driver stopped at an improper place.  Alabama Supreme Court found that the action sounded in contract rather than in tort because it arose out of the breach of an implied contract of carriage, not a breach of duty imposed by law.  85 So. 2d at 439-40.  That finding supports the court's ruling here, focusing

upon whether the misfeasance is based on a duty created by contract instead of imposed by law.

In *Marsh*, the plaintiff brought an action for personal injuries sustained when defendant's airplane in which plaintiff was a passenger landed roughly; he attempted to assert a breach of the implied contractual obligation to transport him safely to his destination.  The federal district court, applying Alabama law, found that the action was in tort, not in contract, and dismissed it as barred by the one-year statute of limitations.  The Supreme Court affirmed, citing *Vines* and also *Waters v. American Casualty Co.,* 73 So. 2d 524 (Ala.  1954); the Court stated:  "When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty–but does not imply a contract–to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached."  *Marsh,* 316 F.2d at 93-94 (quoting *Waters,* 73 So. 2d at 529).  In the instant case, the contract is written, not implied, and it expressly stated promises by LPS not only to provide flood zone determinations but also to do so accurately.  Accordingly, the *Marsh* decision does not require a different result.

The other cases that LPS cites— *Lemmond* and *Great Northern Land*—do not involve a written contract between the parties in which the misfeasance is the negligent performance of the duty created and set out in the written contract.  *Lemmond* involved an action for breach of an alleged implied promise by physicians to render medical treatment, an action barred if it sounded in tort because it was not filed before the patient died; the Court found that it was a tort action, and affirmed the trial court's grant of the defendant's motion to dismiss.  473 So. 2d 1047, 1048 (Ala. 1985).  *Great Northern Land* was an action by a seller against a buyer for damages growing out of the purchase and installation of heavy-equipment tires in which no express

contractual promise was breached; no evidence existed of a written contract between the parties, and the oral agreement made no mention of manner of performance.  The Supreme Court affirmed the trial court's refusal to give defendant's requested charge as to breach of contract. 337 So. 2d 1323, 1326 (Ala. 1976).   Accordingly, the holdings in those cases do not apply to this case nor do they conflict with this court's holding that the current action sounds in *contract*.

(2). Accuracy Guarantee

Having rejected LPS's first argument on the contract versus tort issue, the court turns next to LPS's second argument: that in the contract between Citizens Bank and LPS, LPS did not guarantee accurate flood zone determinations where the information came from third party sources, and thus, its inaccurate determination based on thirty party error did not breach the contract between the parties.

Under Alabama law, the court must look to the "four corners of the contract" itself when interpreting it.  If the contract is "susceptible of more than one reasonable meaning," it is ambiguous.  *Homes of Legend., Inc. v. McCollough,* 776 So. 2d 741, 745 (Ala. 2000). The contract in the instant case provides in relevant part as follows:

> **DUTIES OF [LPS]**
> ***
> • Provide guarantees for accuracy of all FZDs [Flood Zone Determinations], HMDA/Census Tract, and Full Life-of-Loan tracking and reprocessing, backed by external insurance. [LPS] uses a good faith interpretation of Federal Flood Insurance Rate Maps, Federal Flood Hazard Boundary Maps, Census Bureau and Federal Reserve published data, and other published information from governmental and private sources. [LPS] cannot guarantee the accuracy of such outside sources, but assumes responsibility for negligence in any such interpretations.
> ***

(Doc. 19-1).

26

In the instant case, the inaccurate placement of the Kelley property outside the flood zone occurred because a third party whom LPS hired, a latitude/longitude identifier, placed the Kelley property on the wrong FEMA grid map.  When the third party made this error, the automated computer system determined that the properties located in that particular grid were not in a flood zone, and thus, LPS reported the Kelley property incorrectly to Citizens Bank as not being in a flood zone.

Citizens Bank argues that it contracted with LPS to provide an accurate flood zone determination, and LPS did not.  LPS's choice to hire a third party to assist in the determination does not absolve LPS of responsibility for breach of contract when the third party made a mistake resulting in an inaccurate flood zone determination.

The court agrees with Citizens Bank, finding that the contract is not ambiguous and that it guarantees the accuracy of the flood zone determination in the instant case.  The initial sentence in the "DUTIES" paragraph quoted above guarantees the accuracy of the flood zone determinations.  In the second sentence quoted above, the contract recognizes that LPS must depend on specified outside sources to make its flood zone determination, and the contract explains what those outside sources would be:  "Federal Flood Insurance Rate Maps, Federal Flood Hazard Boundary Maps, Census Bureau and Federal Reserve published date, and other published information from governmental and private sources."  This list does not include *all* outside sources, but lists specific federal outside sources and "other *published* information from governmental and private sources."   The list would not reasonably encompass information from any third party with whom LPS may contract to assist it in making a flood zone determination. The last sentence in the paragraph states that LPS does not guarantee the accuracy of *such*

outside sources—referring back to the listed sources—upon which it relies for flood zone determinations, but LPS "assumes responsibility for negligence in any such interpretations."

To the extent that LPS argues that the language of the last sentence means that LPS guarantees all flood zone determinations *except those based on incorrect information from any third parties*, the court rejects that argument. The paragraph lists the outside sources to which it refers, and the list does not include a third party that LPS hired to assist it in flood zone determination.  Thus, the contract language does not absolve LPS from liability under the contract because it hired a third party that provided inaccurate information resulting in an incorrect flood zone determination.  Rather, the contract unambiguously guaranteed the accuracy of flood zone determinations under these circumstances, and LPS assumed the responsibility for negligence in interpreting the listed items such as Federal Flood Hazard Boundary Maps.   The court FINDS that LPS breached the contract in question.

### b.  Element Four: Damages as a Result of the Breach

The court FINDS that Citizens Bank has presented evidence of damages resulting from the breach; it has presented evidence that it would not have issued the loan if it had known that it was in a flood zone, that the property in the flood zone was worth less than property outside of a flood zone, and that after foreclosing on the property, Citizens Bank suffered loss in the sale of property.  The court further FINDS that, although the evidence reflects that damages resulted from the breach,  genuine issues of material fact exist as to the *amount* of damages based on the information currently before the court at summary judgment.

In sum, the court FINDS that the motion for summary judgment of Citizens Bank is due to be GRANTED in favor of the Plaintiff and against the Defendant as to liability under the claim

in Count One for breach of the contract to provide an accurate flood zone determination.  The

court further FINDS that the motion for summary judgment of LPS is due to be DENIED as to

liability under that same claim.  Accordingly, the court FINDS that SUMMARY JUDGMENT is

due to be ENTERED in favor of the Plaintiff Citizens Bank and Trust and against the Defendant

LPS National Flood, LLC as to the breach of contract claim in Count I, with leave to prove the

amount of damages.

      2.  Count II - Indemnity Agreement

      In Count II, Citizens Bank asserts that the contract between the parties contains an

indemnity provision and that LPS must indemnify it from losses occurring as a consequence of

the breach of its promise to provide an accurate flood zone determination.  That provision states

as follows:

**INDEMNIFICATION**

**\*\*\***

•    Company [LPS] shall hold Client safe and harmless from and against
    any and all loss or expense arising from claims or actions by any
    customer of Client based upon the negligence of Company in
    interpreting the above referenced Federal Flood Maps and hence
    failing to correctly identify and report to Client that a particular
    insurable structure securing a loan by Client is within (false flood
    negative) or outside (false flood positive) a Federally defined NFIP
    Special Flood Hazard Area; provided, however, that such liability shall
    in no event exceed the actual loss and expenses to [C]lient less any
    insurance or recovery from another source.  *This indemnification*
    *provision is only applicable to claims made by Client or customer's*
    *[sic] of Client against Client, resulting from damage to Client or*
    *customer's improved real property caused by flooding as defined by*
    *the NFIP (false flood negative) or customer or Client's payment of*
    *unnecessary NFIP flood insurance premiums (false flood positive). . . .*

(Doc. 19-1) (emphasis supplied).

      LPS argues, among other things, that the indemnification provision does not apply to the

instant case; by its express terms, the "indemnification provision is only applicable to claims made by Client or customer's [sic] of Client against Client, resulting from damage to Client or customer's improved real estate property caused by flooding as defined by the NFIP (false flood negative), and the claims in the instant case do not result from damage to the Kelley property caused by flooding.

Citizens Bank argues that the comma in the italicized sentence above cuts off the first part of the italicized phrase from the next two phrases and transforms the first part into a general indemnification provision.  According to Citizens Bank's interpretation, the provision should be read as follows: "This indemnification provision is only applicable to claims (1) made by Client or customer's [sic] of Client against Client, (2) resulting from damage to Client or customer's improved real property caused by flooding as defined by the NFIP (false flood negative) **or** (3) customer or Client's payment of unnecessary NFIP flood insurance premiums (false flood positive) ...." (Pl.'s Resp. Br, Doc. 24, at 15).

The court finds that Citizens Bank's interpretation of the indemnity agreement is not a reasonable one; the court agrees with LPS that the only reasonable interpretation of the indemnification provision is that the provision only applies to claims made by a client or by client's customers against client resulting from damage to real property caused by flooding.   In the instant case, the indemnification provision does not apply because the claims in this case do not result from damage to the Kelley's property caused by flooding.  Accordingly, the court FINDS that the motion for summary judgment by Citizens Bank is due to be DENIED as to the claim in Count II for indemnification.  Further, the court FINDS that the motion for summary judgment by LPS is due to be GRANTED as to that claim; the court will ENTER SUMMARY

JUDGMENT in favor of LPS and against Citizens Bank as to the indemnification claim in Count II.

### D.  Conclusion - Motion for Summary Judgment

In sum, for the reasons stated above, the court FINDS as follows:

•   As to the motion for summary judgment filed by Citizens Bank, the court FINDS that it is due to be GRANTED IN PART and DENIED IN PART; the motion is due to be GRANTED as to the claim for breach of contract in Count I, with leave to prove the amount of damages, and due to be DENIED as to the claim for indemnification in Count II.

•   As to the motion for summary judgment filed by LPS, the court FINDS that it is due to be GRANTED IN PART and DENIED IN PART; the motion is due to be DENIED as to the claim for breach of contract in Count I, and due to be GRANTED as to the claim for indemnification in Count II.

•   The court will ENTER SUMMARY JUDGMENT in favor of Plaintiff Citizens Bank and against Defendant LPS as to LPS's liability on the claim for breach of contract in Count I, with leave to prove the amount of damages, and will ENTER SUMMARY JUDGMENT in favor of Defendant LPS and against Plaintiff Citizens Bank on the claim for indemnification in Count II.

Dated this 25th day of September, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE